

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 10, 2014**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| FRIENDSHIP DAIRIES, A GENERAL PARTNERSHIP, | § § § | Case No. 12-20405-RLJ-11 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION AND ORDER

On February 3, 2014, hearing was held on the emergency motion of the debtor, Friendship Dairies, seeking a stay pending appeal of the Court's order lifting the automatic stay as to Friendship Dairies' major secured creditor, AgStar Financial Services, FLCA, as loan servicer and attorney-in-fact for McFinney Agri-Finance, LLC ("AgStar"). The Creditors Committee and Frontier Capital Group, Ltd. ("Frontier") joined the debtor's motion. AgStar opposes the motion.

Friendship Dairies has appealed the Court's order that was entered January 7, 2014 [Docket No. 773]. Such order (the "Order Lifting Stay") directed that the automatic stay under § 362 of the Bankruptcy Code as to AgStar and its collateral be lifted. As the Order Lifting Stay

recites, hearing was held jointly on Friendship Dairies' chapter 11 plan and the motion of AgStar seeking relief from the automatic stay or, alternatively, conversion to chapter 7 or dismissal.

The Court issued its Memorandum Opinion on January 3, 2014 [Docket No. 767] that set forth the Court's findings and conclusions concerning confirmation of Friendship Dairies' chapter 11 plan. The Court concluded that confirmation must be denied and, on January 9, 2014 [Docket No. 789], issued its order denying confirmation. Then, by the Order Lifting Stay, it lifted the automatic stay as to AgStar and its collateral. In doing so, the Court incorporated its findings and conclusions from the Memorandum Opinion. The Court stated that the "Debtor's inability to confirm a plan during the pendency of this chapter 11 case, the decline in equity, if any, in AgStar's collateral, and the Debtor's inability to service AgStar's indebtedness going forward constitute cause to grant AgStar relief from the automatic stay." Order Lifting Stay at 2.[1] Friendship Dairies sought reconsideration of the Order Lifting Stay, which the Court denied.

Having appealed the Order Lifting Stay, Friendship Dairies now asks this Court for a stay pending appeal. The Court is advised that AgStar has posted the real estate collateral for foreclosure for the first Tuesday of March, 2014, as provided by Texas state law.

Rule 8005 of the Federal Rules of Bankruptcy Procedure addresses stays pending an appeal of a bankruptcy court's ruling. The rule directs that a motion for stay of a judgment or order of a bankruptcy judge, for approval of a supersedeas bond, "or for other relief pending appeal" should first be presented to the bankruptcy judge. *See* Fed. R. Bankr. P. 8005. The

---

[1]The Court, also by the Order Lifting Stay, denied conversion to chapter 7 and set its hearing to consider dismissal or appointment of a chapter 11 trustee on January 22, 2014. Upon such hearing, the Court also denied dismissal and appointment of a chapter 11 trustee.

bankruptcy judge "may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." *Id.* As one court has stated, "Bankruptcy Rule 8005 is by its design a flexible tool which permits a bankruptcy court to uniquely tailor relief to the circumstances of the case, so that the appellate process will neither undo nor overwhelm the administration of the bankruptcy case." *In re Gleasman*, 111 B.R. 595, 599 (Bankr. W.D. Tex. 1990). Courts, including this Court, commonly refer to a Rule 8005 stay as a "discretionary stay" and, as such, incorporate the four-element test for granting of a discretionary stay. *See In re Texas Equip. Co., Inc.*, 283 B.R. 222, 226–27 (Bankr. N.D. Tex. 2002) (citing *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)). The four elements are as follows:

> (1) whether the movant has made a showing of likelihood of success on the merits;
>
> (2) whether the movant has made a showing of irreparable injury if the stay is not granted;
>
> (3) whether the granting of the stay would substantially harm the other parties; and
>
> (4) whether the granting of the stay would serve the public interest.

*Id.*

Some courts have generally held that each element must be met by the party requesting the stay. *Id.* Other courts have taken a more nuanced view. For example, the Sixth Circuit has held that such "factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). The *Griepentrog* court looked to the probability-of-success factor and stated that the extent to which it must be demonstrated is inversely proportional to the amount of irreparable injury suffered by the moving party absent

the stay. *Id.* "Simply stated, more of one excuses less of the other." *Id.* Still other courts have held that though the movant must show satisfactory evidence on all four "standards," each standard need not be given equal weight. *In re Smoldt*, 68 B.R. 533 (Bankr. N.D. Iowa 1986). Interestingly, the court in *Smoldt*, addressing a motion for stay pending appeal of an order lifting stay, held that a discretionary stay was not warranted, but a stay conditioned on the posting of a supersedeas bond was proper. *Id.* It then fashioned the terms of a bond sufficient to protect the secured creditor there. The court noted that since there was no money judgment to be stayed, the amount of the bond was to cover the value of the collateral, the costs of the appeal, and interest accruing on the allowed secured claim (for one year). *Id.*

A bankruptcy case, particularly a chapter 11 proceeding, affects the interests of several creditors and parties in interest. This case is no exception. Here, AgStar was the only objecting creditor to Friendship Dairies' plan. It is the largest secured creditor in the case; Friendship Dairies and AgStar have feuded throughout these proceedings. All other major creditors were on board with Friendship Dairies' chapter 11 plan. The plan as considered by the Court, assuming Friendship Dairies could perform in accordance with the plan, was a good plan for Friendship Dairies' creditors, the court noting AgStar's stringent objection. The plan incorporated numerous, beneficial settlements, including a settlement with Frontier that effectively eliminated $11 million of its $27 million claim. *See* Memorandum Opinion at 5. The settlements and resulting benefits were contingent upon confirmation of Friendship Dairies' plan and performance of Friendship Dairies under the plan.

The first factor is problematic. After all, it is difficult to conceive of a court finding that its own order is likely to be reversed. The standard is not *that* stringent, however. The movant

"need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001). Moreover, the stay of an order lifting stay is different from the typical case in which a discretionary stay is considered. The four-prong test for a discretionary stay is the same standard as traditionally considered in evaluating whether to grant a preliminary injunction. *See Griepentrog*, 945 F.2d at 153. The "merits" to be considered in the typical case are the substantive merits of the action; the injunction is remedial. The substantive issue on appeal here is whether the Court erred in granting relief from the § 362 automatic stay. A stay of such relief goes to the very merits of the underlying action. The effect of stay relief is that AgStar proceeds with foreclosure. The purpose of the foreclosure is to pay Friendship Dairies' debt to AgStar. That Friendship Dairies is indebted to AgStar is not disputed. Were this a money judgment, Friendship Dairies would be entitled to a stay as a matter of right by posting a sufficient supersedeas bond to protect AgStar pending the appeal. The stay of an order lifting stay strikes the Court, given the unique circumstances here, as strikingly similar to the stay of a money judgment.

Friendship Dairies satisfies the other three factors. If AgStar forecloses, the dairy is gone and Friendship Dairies obviously ceases to exist as an ongoing enterprise. The case would no doubt then proceed to full liquidation with dividends to creditors, if any, being much less than that anticipated under a reorganization plan. AgStar contends it will be harmed; it will certainly be delayed. Such harm can be minimized, however. The only public interest here, in the Court's view, is that which is represented by the Bankruptcy Code. The Bankruptcy Code, in particular,

chapter 11, embodies certain policies and principles that should be recognized. This chapter 11 case is still pending. The Court has already denied conversion, dismissal, and appointment of a chapter 11 trustee.[2] In fact, allowing Friendship Dairies to proceed as debtor in possession has been determined by the Court as the best way to protect creditors and the varying interests that they hold. A unique feature of this case concerns the relative lien rights of the parties. As the Court has noted throughout these proceedings, AgStar's liens attach to the dairy facility, Frontier's lien attaches to the dairy herd (though Frontier's lien is potentially subject to avoidance). Given the operation of § 552 of the Bankruptcy Code, post-petition income is generally unencumbered. The Court recognizes the practical problems associated with an immediate foreclosure and liquidation. Finally, the Court recognizes Friendship Dairies' right to a review of this Court's decision and the minimal impact on AgStar in honoring such right.

Upon consideration of the foregoing, the Court finds that a stay pending appeal best serves the interests of all parties, provided AgStar's interest is sufficiently protected during the pendency of Friendship Diaries' appeal. In this regard, Friendship Diaries has proposed that it make payments, akin to adequate protection payments, into the Court's registry. The bulk of AgStar's collateral, the real property and improvements, will not deteriorate as long as Friendship Dairies is a viable and operating dairy facility. As it has already obtained stay relief, however, the stay pending appeal prevents AgStar from immediately foreclosing the dairy and realizing any recovery from a foreclosure sale. The Court further recognizes that AgStar could potentially reinvest any sales proceeds and thus realize the income obtained on such reinvestment.

---

[2]*See supra* note 1.

Accordingly, a stay pending appeal shall issue upon Friendship Dairies, within ten days,

(1) making payment to AgStar in the sum of $85,000, which AgStar shall apply to its principal indebtedness;

(2) providing proof to AgStar of insurance on its collateral, reflecting that it is being maintained as required by the agreements between the parties; and

(3) providing a sworn certificate to AgStar reflecting that all post-petition ad valorem taxes on AgStar's real estate collateral are current in accordance with applicable law.

Friendship Dairies shall continue making monthly payments to AgStar of $85,000 each, due the 20th of each month, and continuing during the pendency of the appeal in the District Court.

SO ORDERED.

### End of Memorandum Opinion and Order ###